**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**CLAUDIA WINTER BOWLES,**

    **Plaintiff,**

**vs.**                         **CIVIL ACTION NO. 2:17-CV-01282**

**NANCY A. BERRYHILL,
ACTING COMMISSIONER OF
SOCIAL SECURITY,**

    **Defendant.**

**<u>PROPOSED FINDINGS AND RECOMMENDATION</u>**

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered February 17, 2017 (Document No. 3.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Memorandum in support of Judgment on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (Document Nos. 12 and 15.)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **GRANT** Plaintiff's request for judgment on the pleadings to the extent that she asks for remand for further administrative proceedings in order to correct the errors below (Document No. 12.), **DENY** Defendant's request to affirm the decision of the Commissioner (Document No. 15.); **REVERSE** the final decision of

the Commissioner; and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**Procedural History**

The Plaintiff, Claudia Winter Bowles (hereinafter referred to as "Claimant"), protectively filed her application for Titles II benefits on October 11, 2013, alleging disability since May 26, 2011[1], because of "acoustic neuroma and [b]rain tumor causing loss of hearing". (Tr. at 175-176, 211.) Her claim was initially denied on March 7, 2014 (Tr. at 104-114.) and again upon reconsideration on April 15, 2014. (Tr. at 116-122.) Thereafter, Claimant filed a written request for hearing on June 12, 2014. (Tr. at 123-124.)

An administrative hearing was held on October 15, 2015 before the Honorable Tierney Carlos, Administrative Law Judge ("ALJ"). (Tr. at 33-75.) On October 27, 2015, the ALJ entered a decision finding Claimant had not been under a disability at any time from December 31, 2011 through the date of the decision. (Tr. at 16-32.) On December 23, 2015, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 15, 281-283.) The ALJ's decision became the final decision of the Commissioner on December 23, 2016 when the Appeals Council denied Claimant's Request. (Tr. at 1-7.)

On February 16, 2017, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 1.) The Commissioner filed an Answer and a Transcript of the Administrative Proceedings. (Document Nos. 7 and 8.) Subsequently, Claimant filed a Memorandum in Support of Judgment on the Pleadings (Document No. 12.), in response, the Commissioner filed a Brief in Support of

---

[1] At the administrative hearing, Claimant's attorney made an oral motion to amend her alleged onset date to December 31, 2011. (Tr. at 39.)

2

Defendant's Decision (Document No. 15.), to which Claimant filed her Reply. (Document No. 18.) Consequently, this matter is fully briefed and ready for resolution.

## Claimant's Background

Claimant was 61 years old as of the amended alleged onset date, and considered a "person of advanced age/closely approaching retirement age" as of the date of the ALJ's decision and throughout the underlying proceedings. See 20 C.F.R. § 404.1563(e). (Tr. at 42.) Claimant last worked as a language arts teacher to sixth grade students; she has a high school education, a teaching degree plus graduate work. (Tr. at 44.) Claimant last worked a full year in 2011. (Id.) She worked as a substitute teacher after her amended alleged onset date, however, it did not rise to the level of substantial gainful activity. (Tr. at 21, 201.)

## Standard

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id.

§ 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through June 30, 2016. (Tr. at 21, Finding No. 1.) Moreover, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity since the amended alleged onset date of December 31, 2011. (Id., Finding No. 2.) Under the second inquiry, the ALJ found that Claimant had the following severe impairments: hearing loss not treating with cochlear implantation; benign tumor of cranial nerves of left ear; and vestibular system disorder. (Id., Finding No. 3.) At the third inquiry, the ALJ concluded Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 24, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity ("RFC") to perform light work:

except she could never climb ladders, ropes, or scaffolds. She could occasionally

climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Regarding communication, she would be limited to hearing from only one ear. She could never work around unprotected heights or moving mechanical parts. She could only occasionally perform jobs involving operating a motor vehicle. She could have occasional exposure to weather, humidity, wetness, dusts, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibration. She could have exposure to no more than a moderate noise level.

(Id., Finding No. 5.)

At step four, the ALJ found Claimant was capable of performing her past relevant work as a teacher and a preschool teacher where they did not involve activities precluded by her RFC. (Tr. at 27, Finding No. 6.) Finally, the ALJ determined Claimant had not been under a disability from December 31, 2011 through the date of the decision. (Id., Finding No. 7.)

**Claimant's Challenges to the Commissioner's Decision**

Claimant contends that the ALJ erred in finding her capable of performing her past relevant work as a teacher, despite his finding her limited to hearing in only one ear and exposure to no more than moderate levels of noise, when he rejected two treating physician's opinions noting that her hearing loss could interfere with her ability to return to her previous work. (Document No. 12 at 6.) Claimant argues that the ALJ cited no evidence that supported his finding she could work in a moderate noise level environment or medical evidence that contradicted her treating physician's opinion that her hearing and vertigo were debilitating. (Id. at 7.) Claimant also asserts that the VE testified that where Claimant was limited to hearing in one ear, she would require a less than moderate noise environment, which would preclude her from her past relevant work as well as other jobs in the unskilled light level of exertion. (Id. at 7-8.) This does not support the ALJ's controlling RFC, and is therefore not supported by substantial evidence. (Id. at 8-9.) Finally, Claimant asks this Court to reverse the final decision and remand for an award of benefits, as

Claimant is considered disabled pursuant to Medical-Vocational Rule 202.06, or alternatively, remand back to the Commissioner so that the errors can be corrected below. (Id. at 9.)

In response, the Commissioner defends the RFC assessment because it accommodated Claimant's auditory limitations that were supported by the evidence. (Document No. 15 at 12.) Diagnostic testing and MRIs revealed no significant change to Claimant's hearing impairment years before and after her alleged onset date. (Id. at 13.) Her hearing impairment had little effect on her activities of daily living and medical records indicated that her hearing was consistently intact to conversation. (Id. at 14.)

Further, the Commissioner contends that the ALJ appropriately considered the medical opinion evidence in assessing Claimant's RFC and explained why he discounted the treating opinion evidence. (Id. at 15.) Moreover, the treating opinion evidence was less consistent with the evidence of record, as opposed to the State agency consultants' opinions. (Id.) For instance, Dr. Fatima Aziz provided a speculative opinion without explanation or other support, therefore, the ALJ's evaluation was proper under the Regulations. (Id. at 16.) The Commissioner also argues that contrary to Claimant's assertion, treating physician Dr. Iva Moore did not provide a "medical opinion" as defined under the Regulations, and further, even assuming it was an opinion, the "debilitating" nature of her impairment is an issue reserved to the Commissioner. (Id. at 17.)

Next, the Commissioner argues that the ALJ referenced other evidence in the record that supported his RFC with respect to his limitation to a moderate noise level, specifically, the State agency physicians' opinions that Claimant could work in an environment with only moderate noise levels and hearing from only one ear. (Id. at 18.)

Finally, with respect to the VE's testimony, the Commissioner states that the ALJ posed

more than one hypothetical, but only had to apply the one with credibly established limitations. (Id. at 19.) The VE confirmed that if Claimant can hear from one ear, and is restricted to a work environment with a moderate noise level, then she could perform her prior relevant work as a teacher. (Id. at 19-20.) Claimant misconstrues the colloquy between the ALJ and the VE that Claimant was limited to "a quieter environment" and could therefore not perform her past work. (Id. at 19-20.)

The Commissioner asserts that the final decision is supported by substantial evidence and asks that it be affirmed. (Id. at 20.) However, should the Court reverse the final decision, the Commissioner asks that the matter be remanded for further proceedings below, not for an award for benefits. (Id.)

Claimant replies that the medical evidence is not at issue here, but the ALJ's vague RFC noise level restriction to moderate levels and the VE's conflicting testimony. (Document No. 18 at 1.) With regard to Dr. Aziz's medical opinion, the Commissioner ignored her own Regulations that where the ALJ found it inconsistent or insufficient, he was obliged to obtain further explanation for clarification, and furthermore, the ALJ did not cite any persuasive contrary evidence required to discount a treating source opinion. (Id. at 2.) Finally, Claimant argues that the VE's testimony confirms that Claimant's ability to hearing out of one ear and limitation to a less than moderate noise level work place would preclude her from her past jobs as well as other jobs. (Id. at 3.) Claimant renews her request for remand in order for the ALJ to correct the errors alleged herein. (Id.)

**The Relevant Evidence of Record**[2]

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

The undersigned has considered all evidence of record, including the medical evidence, pertaining to Claimant's arguments and discusses it below.

<u>Medical Records Prior to Amended Alleged Onset Date:</u>

On four occasions between September 2006 and September 2010, Claimant treated with Stephen Wetmore, M.D., for intracanalicular acoustic neuroma and left ear hearing loss. (Tr. at 366-370, 373-374.) Dr. Wetmore noted that Claimant's hearing loss in her left ear began around 2005. (Tr. at 369.) Examinations during this period showed translucent, intact tympanic membranes, although in 2007, Dr. Wetmore noted that her left tympanic membrane was slightly thinned, but still mobile. (Tr. at 366-367, 369, 373.) In 2010, Dr. Wetmore also noted that Claimant's external auditory canals were patent without inflammation; her middle ear was aerated, mobile; and she had normal to pneumatic otoscopy. (Tr. at 373.)

Claimant underwent a number of diagnostic tests prior to the relevant period. Several MRIs between 2006 and 2010 revealed a 4x6 mm acoustic neuroma, which remained essentially unchanged in size. (Tr. at 366-367, 371, 373, 377-378.) An initial 2006 audiogram revealed normal hearing on the right and sensorineural hearing loss with small conductive components on the left side. (Tr. at 369-370.) When she returned one year later in 2007, her audiogram was "almost unchanged." (Tr. at 367.) In 2008, Claimant's audiogram showed speech reception threshold similar to the year before, although her word recognition score dropped to 28%. (Tr. at 366.) By 2010, her audiogram revealed improved word recognition in the left ear, up to 64%. (Tr. at 373.) Overall, her 2010 audiogram levels were "slightly" worse than 2008. (<u>Id</u>.)

On October 13, 2010, Claimant had a follow up appointment with her primary care physician, Fatima Aziz, M.D. (Tr. at 334-335.) On examination, Dr. Aziz noted that her neuroma

was unchanged, despite her complaints of hearing loss. (Tr. at 335.) At another follow-up examination on January 11, 2011, Claimant had no complaints and claimed to be doing well with her medications. (Tr. at 331-332.) Claimant refilled prescriptions with Dr. Aziz on July 18, 2011; she claimed she was "feeling really good, no complaints" and that she was "doing well with her established medical conditions." (Tr. at 321-323.)

Medical Records After Amended Alleged Onset Date:

Claimant continued treatment with Dr. Aziz between January 2012 and January 2013. At these appointments, she reported that she was doing well with her established medical conditions. (Tr. at 306-311, 314-316, 318.) On January 18, 2012, she complained of worsened hearing, but Dr. Aziz did not perform an otoscopic examination. (Tr. at 318-319.) At her last appointment with Dr. Aziz on January 22, 2013, she claimed there were "no significant changes in her health history." (Tr. at 306-308.)

Claimant next saw Dr. Wetmore on February 8, 2013. (Tr. at 298-299.) She reported that she had difficulty locating sounds and had balancing issues when on a ladder. (Tr. at 298.) On examination, her pinnae had normal shape and position; her external auditory canals were patent without inflammation; and her tympanic membranes were intact, translucent, midposition, and middle ear aerated. (Id.) Dr. Wetmore noted Claimant's audiogram revealed only "very minimal worsening of her hearing compared to the audiogram from 2010." (Id.) Her "word recognition score was identical at 64%" and "pure tones had decreased slightly at 250 Hz." (Id.) On the same day, Claimant underwent an MRI, which showed "the tiniest crescent of CSF signal intensity in the fundus of the left internal auditory canal" and that the mass was "not detectably changed." (Tr. at 383.)

In January 2014, Claimant began treatment with primary care provider Iva E. Moore, M.D. (Tr. at 351-354.) At that time, Claimant denied vertigo, ear pain, and ringing in the ears. (Tr. at 352.) On examination, Dr. Moore observed that Claimant's external ears appeared normal with no lesions present and that her hearing was "intact to conversational voice" with "both ears". (Tr. at 353.) At follow ups with Dr. Moore in March and August 2014, Claimant again denied vertigo, ear pain, and ringing in the ears. (Tr. at 356, 359.) At the August examination, Dr. Moore noted that Claimant's external ears appeared normal; the tympanic membranes were within normal limits bilaterally without perforations; and her hearing was intact to conversation. (Tr. at 360.)

On December 1, 2014, Claimant had an appointment with Dr. Moore to fill out forms. (Tr. at 362-365.) Dr. Moore noted that Claimant had a history of acoustic neuroma, but "no surgery is suggested due to risk however she has debilitating vertigo and hearing loss." (Tr. at 362.) However upon a review of systems, Claimant again denied vertigo, ear pain, or ringing in her ears. (Tr. at 363.) On examination, Dr. Moore noted that Claimant's external ears appeared normal with no lesions present. (Tr. at 364.) An otoscopic examination revealed tympanic membranes within normal limits bilaterally without perforations. (Id.) It was noted that Claimant's hearing was intact to conversation. (Id.)

By April 2015, Claimant returned to Dr. Moore and reported occasional vertigo, but said that it was improving. (Tr. at 405.) She denied ringing in her ears. (Tr. at 406.) On examination, Dr. Moore once again noted that Claimant's external ears appeared normal with no lesions present; tympanic membranes were within normal limits bilaterally without perforations; and her hearing was intact to conversation. (Tr. at 407.)

After the ALJ issued his decision, Claimant submitted evidence to the Appeals Council,

consisting of treatment notes from Dr. Wetmore, dated February 2016. (Tr. at 5, 438-439.) At this February 2016 appointment, Claimant complained of continued difficulty hearing, although she was "uncertain whether her hearing has actually gotten worse." (Tr. at 438.) On examination, the pinnae had normal shape and position, both external auditory canals were patent without inflammation, and both tympanic membranes were intact, translucent, mid-position, and middle ear aerated. (Id.) An MRI that same day revealed "a small region of enhancement within the internal auditory canal on the left," which was slightly more prominent than the 2013 study, but much less prominent compared to 2008 and 2010. (Tr. at 435.) Audiogram results were "somewhat worse in the left ear with a moderate to profound sensorineural hearing loss with speech awareness of 45 dB but only 20% word recognition compared to 64% word recognition in 2013." (Tr. at 439.) Dr. Wetmore noted that Claimant "is having a great deal of difficulty dealing with her hearing loss and is unable to work due to difficulty hearing." (Id.)

Treating Source Statement:

On January 23, 2014, the Agency requested a treating source statement from Dr. Aziz regarding Claimant's psychological conditions. (Tr. at 344.) Dr. Aziz listed diagnoses of insomnia and "anxiety is due to acoustic neuroma and is somewhat situational based on activity." (Id.) Dr. Aziz opined that Claimant "is deaf in left ear from acoustic neuroma this might interfere with teaching[.] The insomnia and depression has been ongoing for many years." (Id.) Dr. Aziz indicated she did not make a referral for mental health treatment. (Id.)

State Agency Medical Consultants:

On January 28, 2014, Fulvio Franyutti, M.D. reviewed the record and opined that Claimant could perform a range of light work, except she had some postural limitations and should avoid

concentrated exposure to extreme temperatures, noise, and hazards such as machinery and heights. (Tr. at 83-85.) On April 11, 2014, Subhash Gajendragadkar, M.D. affirmed Dr. Franyutti's opinion. (Tr. at 96-98.)

**The Administrative Hearing**

Claimant Testimony:

Claimant testified that her driver's license was expired because she was sick at the time she had to renew it, but she was unsure she would be able to renew because she got pulled over by a law enforcement officer and could not hear the siren; her hearing loss would be noted on her license. (Tr. at 42-44.) She stated that she stopped working as a full time teacher because every evening she came home she would go to bed, feeling exhausted due to anxiety, and also because of her inability to hear. (Tr. at 47, 48.) She testified that she had trouble hearing her students and that she could not always hear what came over the intercom. (Tr. at 48.) Claimant also had problems hearing during faculty meetings because the teachers would not stop talking. (Id.) She cannot hear where a noise originates, and in a classroom setting, it was "impossible" for her to hear. (Id.) She "suffered" through substitute teaching pre-kindergarten for three months because she had difficulty hearing and the kids did not understand that they could only speak one at a time so that she could hear them. (Tr. at 58.)

Claimant testified that she has difficulty with balancing due to vertigo, which comes and goes, and can be worse on some days than on others. (Tr. at 48-49.) She can climb stairs, but very carefully and slow. (Tr. at 49.)

Claimant testified that she could not hear out of her left ear, but could hear out of her right. (Tr. at 48.) Claimant also stated that she also has constant noise in her left ear, and that it is loud,

and sounds like crickets. (Tr. at 50.) It sometimes affects her ability to hear other conversations with her right eat, but it depends on the place and situation. (Id.) She used to be social, but because she cannot hear conversations, she has become depressed and anxious. (Tr. at 53.) She admitted that she was anxious about having the hearing because she was afraid she would not be able to hear "if folks would be talking at the same time", but she stated she was okay. (Id.) She has friends who understand her condition and accommodate her hearing by chatting with her on the right side, and not have background noise, like music. (Tr. at 56.) When she talks on the phone, she always has it set on speaker. (Id.)

Claimant takes no medication for the acoustic neuroma or vertigo because there is none for these conditions. (Tr. at 51.) She reported that the only thing that can be done for the acoustic neuroma is to monitor its size through MRIs. (Id.) As a result of her condition, she states that she had become sedentary because it affects her balance. (Tr. at 52.) She does take medication for depression and anxiety, and to keep herself asleep throughout the night. (Tr. at 53, 54.) Claimant testified that Dr. Wetmore told her that a hearing aid would not help her because it would only make the noise in her left ear louder. (Tr. at 58.)

Patricia McFann, Vocational Expert ("VE") Testimony:[3]

The VE testified that Claimant's past work as a teacher was light and skilled preschool with a specific vocational preparation (SVP) level of 7, and her past work as a preschool teacher was also classified as light and skilled with a specific vocational preparation (SVP) level of 7, but was medium as performed by Claimant. (Tr. at 61.)

The ALJ asked the VE to define a moderate noise level, which she  explained that moderate

---

[3] The appeal concerns the colloquy between the ALJ and the VE during the administrative hearing. Accordingly, several portions of the testimony is reproduced verbatim from the transcript, *infra*.

noise included noise found in office settings or retail businesses; moderate noise means no exposure to louder noises, such as those on the street. (Tr. at 62.) The VE testified that a classroom has a moderate noise level. (Tr. at 63.)

The first hypothetical question posed to the VE involved an individual of Claimant's age, education, and vocational experience, limited to light work with: occasional climbing of ramps and stairs; never climbing ladders, ropes, and scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; as far as communications, limited to hearing only from one ear; never working at unprotected heights or around moving mechanical parts; occasionally operating a motor vehicle; with occasional exposure to weather, humidity, wetness, dust, odors, fumes, extreme cold, extreme heat, and vibrations; and limited to noise at a moderate level. (Id.) The VE testified that such an individual would be capable of performing Claimant's past work as a teacher as actually and generally performed, and preschool director/teacher as generally performed. (Tr. at 64.) The VE further testified that the skills were transferable, but only within the educational field due to Claimant's age. (Tr. at 66-67.) The VE also stated that the hypothetical individual could perform other work at the light unskilled level, including mail clerk, price marker, and cashier. (Tr. at 68.) The VE testified that the hypothetical individual could perform sedentary unskilled work, including sorter, inspector, and surveillance system monitor. (Tr. at 69-70.)

The ALJ then asked another hypothetical, identical to the first, except in addition to hearing from only one ear, it further limited the individual to hearing only "simple basic communications." (Tr. at 70-71.) The ALJ explained the hypothetical further that the individual had "a limited ability more than your average person can hear with both ears . . . a loss of hearing and an ability to hear what a normal person would hear." (Tr. at 71.)

14

| VE: | I think I understand what you're saying, and I think based on that because you're going to be limiting her to a quieter environment, because there's going to be interference from just regular routine noise that's in like an office or classroom setting. It's going to have to be quieter than that. Is that - - |
|---|---|
| ALJ: | Yes. |
| VE: | - - what you're trying to say? In terms of her being able to understand responses - - |
| ALJ: | Yes. |
| VE: | - - okay. In that event I would not be able to identify any jobs that she could perform. |
| ALJ: | And the past jobs I think would also be out. Correct? |
| VE: | Yes, they would because they were all moderate noise level, and you have a combination of conversations as well as background noise. Even furnaces kicking on and off or your air conditioning kicking on and off. Those kinds of noises plus children chattering, possibly - - |

(Tr. at 71-72.) The ALJ identified a third hypothetical, identical to the first, except that the individual was limited to less than moderate noise levels. (Tr. at 72.) The VE testified that the individual could not perform Claimant's past work or other jobs. (Tr. at 72-73.)

Upon questioning by Claimant's attorney, the VE confirmed that where the hypothetical individual could only tolerate setting where there are no multiple conversations occurring at once and only quiet settings, that would be defined as "less than moderate" noise level, and would rule out the past work. (Tr. at 73.) The VE further testified that if the individual were limited to quiet work, then she could not perform her past work as a teacher, including the unskilled work because she would have to be able to hear. (Tr. at 74.)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular
> conclusion. It consists of more than a mere scintilla of evidence but may be
> somewhat less than a preponderance. If there is evidence to justify a refusal to direct
> a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d

640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving

conflicts in the evidence, however, the Court determines if the final decision of the Commissioner

is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th

Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape

their duty to scrutinize the record as a whole to determine whether the conclusions reached are

rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists,

the Court must affirm the Commissioner's decision "even should the court disagree with such

decision." Blalock, 483 F.2d at 775.

**Analysis**

The RFC Assessment and Opinion Evidence:

Claimant argues the ALJ did not provide adequate explanation for his RFC assessment,

specifically with regard to Claimant's restriction from "no more than a moderate level of noise"

given that he found she could only hear out of one ear. (Document No. 12 at 5-6.) Residual

functional capacity represents the *most* that an individual can do despite his limitations or

restrictions. See Social Security Ruling 96-8p, 1996 WL 3744184, at *1 (emphasis in original).

The Regulations provide that an ALJ must consider all relevant evidence as well as consider a

claimant's ability to meet the physical, mental, sensory and other demands of any job; this

assessment is used for the basis for determining the particular types of work a claimant may be

able to do despite his impairments. 20 C.F.R. § 404.1545(a). The RFC determination is an issue

reserved to the Commissioner. See Id. § 404.1527(d).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physician's opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

Diaz v. Chater, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted).

In this case, the ALJ acknowledged Claimant's allegations that she could not hear the siren

from an unmarked police car following her, that she had trouble hearing students, that she could

not always hear the intercom at school, that she had trouble hearing during teachers' meetings, that

she had constant noise in her left ear that is loud and affects her ability to hear and that hearing

aids would be of no benefit to her, and that she stopped working because of her hearing and

balancing issues. (Tr. at 25.) Following the discussion of the medical evidence regarding

Claimant's hearing and vertigo issues, explicitly recognizing that Dr. Moore "note[d] the claimant

had debilitating vertigo and hearing loss", but that Claimant's "hearing was intact to conversation"

(Tr. at 25, 364, 407.), the ALJ determined Claimant's hearing loss was not a disabling condition.

(Tr. at 25, 26.) The ALJ specifically noted, "I observed the claimant had no problems during the

hearing. I note that she was able to 'clearly hear' everything said and had no problem with word

recognition." (Tr. at 26.)

The ALJ gave "no weight" to Dr. Aziz's opinion that Claimant's deafness in her left ear

"might interfere with teaching" because he found it "speculative and is not supported by any

explanation." (Id.) Though he acknowledged that Dr. Moore noted Claimant had "debilitating

vertigo and hearing loss", the ALJ did not discuss this any further. (Tr. at 25.) The Commissioner

generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. § 404.1527(c)(2). Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. § 404.1527(c)(2).

Even assuming that Dr. Moore's use of the word "debilitating" was an opinion, the undersigned would agree with the Commissioner that it related to Claimant's functional capabilities and is therefore a "residual functional capacity . . . or the application of vocational factors" that is a determination reserved solely to the Commissioner. Id. § 404.1527(d)(2). Further, the ALJ was not duty bound to "give any special significance to the source of an opinion on issues reserved to the Commissioner." Id. § 404.1527(d)(3).

However, with respect to Dr. Aziz's opinion, the undersigned agrees with Claimant that the ALJ did not provide "good reasons" for outright rejecting his opinion that Claimant's hearing loss "might interfere with teaching." Claimant's testimony was very clear that she had major difficulties in performing her past work as a teacher in a classroom because of competing noises or conversations. The treatment records from her treating physicians, Drs. Aziz and Moore, and to an extent, Dr. Wetmore, the specialist who had been following her for several years, corroborate this testimony.

Dr. Aziz specifically opined her hearing loss "might interfere" with her teaching job, and although Dr. Moore noted her hearing was "intact to conversation", the undersigned is mindful that Claimant's examinations did not take place in an environment where the noise level was equal to a classroom. Though the ALJ also found Claimant did not exhibit problems during the hearing, again, this environment was not the same as a classroom.[4] Indeed, Claimant indicated at the hearing that she can hear "one-on-one" and she found the hearing "very accommodating" to her hearing loss issues, but she could not hear if people talked at the same time. (Tr. at 48, 53.) To that end, Dr. Aziz's opinion was not "speculative", though it should have been accompanied by sufficient explanation, as noted by the ALJ. Therefore, additional inquiry into the treating physician's opinion for clarification was warranted pursuant to 20 C.F.R. § 404.1520b.

Moreover, though the Commissioner has argued that the State agency medical consultants' opinions provided the "persuasive contrary evidence" that undermined Dr. Aziz's opinion, insofar as both opined Claimant should avoid concentrated exposure to noise, however, this does not address the particular hearing issues with this Claimant. These opinions did not discuss "moderate" or "less than moderate" noise or whether Claimant needed a "quiet" environment. This does not provide the "persuasive contrary evidence" envisioned by Fourth Circuit jurisprudence when a treating physician's opinion is given less than controlling weight. Coffman v. Bowen, 829 F.2d 541, 517 (4th Cir. 1987); Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986); Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). To that extent, the undersigned agrees with Claimant that the

---

[4] The undersigned finds it dubious, at best, for an ALJ to attempt to equate the environment of a hearing room to that of a school classroom. This is particularly true when Claimant gave the logical explanation of the different environments. Furthermore, the undersigned is disheartened that the ALJ would use his subjective observations at the hearing, based upon completely different environments, to overrule or discount years of objective medical tests and evidence.

RFC assessment with respect to her hearing impairment does not contain the necessary explanation that allows for meaningful judicial review. <u>Mascio v. Colvin</u>, 780 F.3d 632, 636 (4th Cir. 2015).

The VE's testimony established that a classroom setting had a moderate noise level. (Tr. at 63.) The first hypothetical contained the limitations noted in the RFC,[5] described *supra*, to which the VE opined that Claimant could still do her past relevant work as a teacher. (Tr. at 63-64.) Interestingly, the VE further on in her testimony described a moderate noise level as having "a combination of conversations as well as background noise." (Tr. at 72.) This is an important difference to the controlling RFC, because the ALJ posed an additional restriction that the individual is limited to "simple basic communication." (Tr. at 70.) The ALJ attempted to explain the limitation further, " - - I guess what I'm getting at is that it sounds to me like as a teacher you got to be able to hear more than just regular communication. . . . You got to be able to concentrate and listen to what a child or somebody is saying. You got to listen to their questions - -" (<u>Id</u>.)

The ALJ continued to explain this additional restriction, stating that the individual has "a limited ability more than your average person can hear with both ears . . . a loss of hearing and an ability to hear what a normal person would hear." (Tr. at 71.) After the discussion with the VE, the ALJ confirmed that the additional restriction necessitated that such an individual would require a work setting "quieter" than a classroom, to "less than moderate" noise level, in order for the individual to "understand responses" (Tr. at 72.) Under this restriction, the VE testified that such an individual would be precluded from not only her past relevant work, but also all the other unskilled jobs she identified. (Tr. at 73-74.)

The undersigned appreciates that hypothetical questions need only incorporate those

---

[5] (Tr. at 24, Finding No. 5.)

limitations that an ALJ accepts as credible and that are supported by the record. <u>See Walker v. Bowen</u>, 889 F.2d 47, 50 (4th Cir. 1989). Nevertheless, the evidence concerning Claimant's inability to hear conversations in a classroom setting was consistent; the evidence concerning Claimant's ability to hear conversations in quieter settings, such as her doctors' examination rooms and at the administrative hearing, was also consistent. Given that the medical opinion evidence and the testimonial evidence indicated Claimant was not able to perform her past work as a teacher due to her hearing, the ALJ did not "build an accurate and logical bridge from the evidence to his conclusion" where the Court could find the RFC assessment was based on substantial evidence. <u>Monroe v. Colvin</u>, 826 F.3d 176, 189 (4th Cir. 2016) (quoting <u>Clifford v. Apfel</u>, 227 F.3d 863, 872 (7th Cir. 2000)). In short, the undersigned **FINDS** that the ALJ's consideration of and resolution of Claimant's limitations and abilities were not "rational" and therefore not based upon substantial evidence. <u>Oppenheim v. Finch</u>, 495 F.2d at 397.

Because the issues presented in this appeal necessarily involve the reconciliation of conflicting evidence, and the weighing of evidence, it is beyond this Court's jurisdiction to remand with an award for benefits. <u>See</u> SSR 96-8p, 1996 WL 3741784, at *7; <u>Johnson v. Barnhart</u>, 434 F.3d 650, 653 (4th Cir. 2005). Accordingly, remand, not reversal, is the proper remedy. <u>I.N.S. v. Ventura</u>, 537 U.S. 12, 16-17 (2002); <u>Florida Power & Light Co. v. Lorion</u>, 470 U.S. 729, 744 (1985); <u>Radford v. Colvin</u>, 734 F.3d 288, 295 (4th Cir. 2013).

## **<u>Recommendations for Disposition</u>**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Claimant's request for judgment on the pleadings to the extent that she asks for

remand for further administrative proceedings (Document No. 12.), **DENY** the Defendant's request to affirm the decision (Document No. 15.), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter back to the Commissioner to make a proper evaluation of the Claimant's treating physician(s) opinion(s) and to assess the appropriate RFC to determine whether Claimant is capable of returning to her past work as a teacher.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Copenhaver, and this Magistrate Judge.

22

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: September 29, 2017.

Omar J. Aboulhosn
United States Magistrate Judge