```
         UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF WEST VIRGINIA
                  AT CHARLESTON
```

CLAUDIA WINTER BOWLES,

    Plaintiff,

v.                                Civil Action No. 2:17-cv-01282

NANCY A. BERRYHILL, Acting
Commissioner of the Social
Security Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending are the objections to the magistrate judge's Proposed Findings and Recommendation ("PF&R"), filed by Nancy A. Berryhill ("the Commissioner") on October 13, 2017.

### I. Procedural History

The plaintiff, Claudia Winter Bowles ("Claimant"), instituted this action on February 16, 2017, pursuant to 42 U.S.C. § 405(g) (2016). Claimant seeks judicial review of the Commissioner's final decision denying her application for disability insurance benefits. She claims that hearing loss in her left ear and mental impairments such as anxiety and insomnia prevent her from working as a teacher. (See Tr. 22, 25.) Only Claimant's hearing loss is at issue here.

As the magistrate judge noted, Claimant was 61 years old as of the amended alleged onset date, December 31, 2011, and considered a person of advanced age or closely approaching advanced age as of the date of the ALJ's decision on October 27, 2015. She last worked as a language arts teacher to sixth grade students and last worked a full year in 2011. She worked as a substitute teacher briefly after her amended alleged onset date; however, that did not rise to the level of substantial gainful activity. The ALJ determined that Claimant met the requirements for insured worker status through June 30, 2016.

The ALJ found that Claimant had the residual functional capacity ("RFC") to perform light work with relatively few limitations "except . . . she would be limited to hearing from only one ear . . . and could have exposure to no more than a moderate noise level." (Id. 24.) The ALJ further found Claimant was capable of performing her past relevant work as a teacher and a preschool teacher where that did not involve activities precluded by her RFC. (Id. 27.)

Claimant first experienced hearing loss in her left ear sometime in 2005. (Id. 369.) In 2006, Dr. Stephen J. Wetmore, an otolaryngologist, with the aid of MRIs diagnosed Claimant with an acoustic neuroma on her left side, which resulted in a degree of hearing loss in her left ear. (Id. 368-

70.) Over the ensuing years, Claimant continued visiting Dr. Wetmore once every two or three years for further evaluation. (See id. 366-91, 413-40.) On February 8, 2013, - Claimant's only visit after her onset date on December 31, 2011 and before the ALJ's decision on October 27, 2015 - Dr. Wetmore measured Claimant's acoustic neuroma "at 4x3 mm[,] . . . somewhat smaller than the previous study" in 2010, and an audiogram showed that Claimant had a "word recognition score" of 64% and that her "pure tones" were at 250 Hz. (Id. 432.) Dr. Wetmore concluded that these values "show[ed] very minimal [w]orsening of [Claimant's] hearing compared to . . . 2010" and assessed Claimant as suffering from "[s]ensorineural hearing loss" in her left ear. (Id.)

After the ALJ's decision on October 27, 2015, Claimant had another appointment with Dr. Wetmore on February 11, 2016. (Id. 438.) At this appointment, an MRI revealed "a small region of enhancement within the auditory canal on the left" when compared to Claimant's 2013 study. (Id. 435.) Claimant's audiogram showed that she had "only 20% word recognition," and Dr. Wetmore concluded that Claimant "had somewhat worse hearing in the left ear with a moderate to profound sensorineural hearing loss." (Id. 439.) This evidence was submitted to the Appeals Council before whom Claimant sought review of the ALJ's

3

decision which became the final decision of the Commissioner when the Appeals Council denied Claimant's request for review on December 23, 2016.

Claimant began visiting Dr. Fatima Aziz, a primary care physician, around September 15, 2010. (Tr. 336.) On October 13, 2010, Claimant had a follow-up appointment with Dr. Aziz, during which Claimant stated that she was currently experiencing "[h]earing [l]oss" and Dr. Aziz noted that her "neuroma is unchanged." (Id. 334-35.) On January 11, 2011, Claimant had another follow-up with Dr. Aziz. (See id. 331-33.) On February 2, 2011, Claimant visited Dr. Aziz for an illness, experiencing "[s]ore throats, [h]earing loss, and [c]ough." (See id. 327-30.) On April 7, 2011, Claimant visited Dr. Aziz again for an illness. (See id. 325-26.) On July 18, 2011, Claimant had a follow-up appointment with Dr. Aziz. (See id. 321.) On January 18, 2012, Claimant had a follow-up appointment with Dr. Aziz where she again reported that she was doing well, but she also noted that her "[h]earing is getting worse in left ear." (Id. 318.) On July 18, 2012; August 21, 2012; January 22, 2013; and July 18, 2013, Claimant returned to Dr. Aziz for follow-up appointments. (See id. 303-25.)

In January 2014, Claimant began visiting Dr. Iva E. Moore for primary care. (Id. 351.) Claimant had a total of

five appointments with Dr. Moore through April 2015. (See id. 351, 355, 358, 362, 405.) At these five appointments, Dr. Moore noted that Claimant's hearing was "intact to conversation" during all but one (Dr. Moore made no remarks concerning Claimant's hearing during that one), and Claimant complained of vertigo only once and never of hearing loss. (See id. 352-53, 356-57, 359-60, 363-64, 406-07.) At a December 2014 appointment, Dr. Moore noted, however, that "[Claimant] has debilitating vertigo and hearing loss," a statement made without articulating any basis for it or the degree of debilitation. (Id. 362.)

Two state agency medical consultants reviewed Claimant's medical records. First, Dr. Fulvio Franyutti opined that, based on the evidence, Claimant should avoid concentrated exposure to noise, among others. (See id. 83-85.) Nevertheless, Dr. Franyutti concluded that Claimant was not disabled and could perform work as a teacher as it is generally performed in the national economy despite her limitations. (Id. 85-86.) The second medical consultant, Dr. Subhash Gajendragadkar, concurred with Dr. Franyutti. (See id. 96-99.) At Claimant's hearing before the ALJ, Patricia McFann, a vocational expert, affirmed that a person under the limitations opined by the medical consultants could perform work as a

5

teacher as it is generally performed in the national economy. (Id. 61-64.) However, on February 20, 2014, in response to a request for information "to help address [Claimant's] psychological allegations" in connection with Claimant's request for social security benefits, Dr. Aziz stated that "[Claimant] is deaf in left ear from acoustic neuroma this might interfere with teaching (2011 diagnosed)." (Id. 344.) Ultimately, on October 27, 2015, the ALJ denied Claimant's request for benefits, (id. 27), and, as noted, the appeals council denied review of the ALJ's decision, (id. 1).

Claimant initiated this action in this court on February 16, 2017. According to 28 U.S.C. § 613(b)(1)(B) and the standing order in this district, the action was referred to United States Magistrate Judge Omar J. Aboulhosn for consideration. Claimant moved for judgment on the pleadings on June 26, 2017. On September 29, 2017, the magistrate judge filed his PF&R. He recommends that the court

> grant [Claimant's] request for judgment on the pleadings to the extent that she asks for remand for further administrative proceedings in order to correct the errors below, deny [the Commissioner's] request to affirm the decision of the Commissioner[,] reverse the final decision of the Commissioner[,] and remand this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g).

(PF&R 1-2 (emphases and citations omitted).) On October 13, 2017, the Commissioner filed objections to the PF&R, to which Claimant responded on November 2, 2017.

The Commissioner lodges four objections to the magistrate judge's PF&R. First, she claims that the magistrate judge erred when he found that the administrative law judge ("ALJ") failed to provide "good reasons" for rejecting the opinion of Claimant's treating physician. (<u>See</u> Defendant's Objections to PF&R ("Obj.") 2-3.) Second, she contends that the magistrate judge was wrong to suggest that the ALJ should have recontacted the treating physician for clarification of the physician's opinion. (<u>Id.</u>) Third, she argues that, contrary to the magistrate judge's view, the Social Security Act's implementing regulations do not require the presentation of "persuasive contrary evidence" to diminish a treating physician's opinion. (<u>Id.</u> 7.) Fourth, she alleges that the magistrate judge impermissibly reweighed the evidence and assessed credibility. (<u>Id.</u> 8-9.)

II. Standard of Review

The court reviews de novo those portions of the magistrate judge's PF&R to which objections are timely filed. 28 U.S.C. § 636(b)(1)(B); <u>see</u> <u>Orpiano v. Johnson</u>, 687 F.2d 44,

7

47 (4th Cir. 1982); see also 20 C.F.R. § 416.927(e)(1) (ultimate decision regarding disability determinations rests with the Commissioner). On the other hand, the standard for review of the Commissioner's decision is rather deferential to the Commissioner, for "a reviewing court must 'uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017) (quoting Preston v. Heckler, 769 F.2d 988, 990 (4th Cir. 1985)); Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974) (court must scrutinize the record as a whole to determine whether the conclusions reached are supported by substantial evidence); see also 42 U.S.C. § 405(g). Substantial evidence is that which "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted); accord Brown, 873 F.3d at 267.

"In reviewing for substantial evidence, [a district court does] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). Substantial evidence is by definition more than "a mere scintilla," Smith v. Chater, 99 F.3d 635, 638

(4th Cir. 1996), but "may be somewhat less than a preponderance," Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1996)).

III. Discussion

The Commissioner first argues that the magistrate judge erred in finding that the ALJ did not provide "good reasons" for rejecting the opinion of Claimant's treating physician, Dr. Aziz,[1] as required by 20 C.F.R. § 404.1527(c)(2). (See Obj. 2-3.)

In general, an ALJ must give more weight to the medical opinion of a claimant's "treating sources," such as a

---

[1] The ALJ's decision does not explicitly state whether Dr. Aziz (or any other physician) is, in fact, a treating physician. The Social Security regulations define a "treating source" – i.e., a treating physician – as one who has treated a claimant on an "ongoing" basis, considering factors such as the frequency of visits, the type of treatment, and the nature of the claimant's condition. See 20 C.F.R. § 404.1527(a)(2). Similar to the ALJ, neither the magistrate judge, Claimant, nor the Commissioner expressed concerns on this issue. For purposes of this decision, then, the court treats Dr. Aziz as a treating physician in accordance with how the parties evidently interpreted the ALJ's decision. See SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.").

9

treating physician. 20 C.F.R § 404.1527(c)(2) (2017). In fact, a treating physician's opinion on "the nature and severity" of a claimant's impairments must be given "controlling weight" when such an opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." Id.

As a corollary, the United States Court of Appeals for the Fourth Circuit holds that, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). In doing so, the ALJ must apply the following six factors: "(1) the physician's length of treatment of the claimant, (2) the physician's frequency of examination, (3) the nature and extent of the treatment relationship, (4) the support of the physician's opinion afforded by the medical evidence of record, (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician." Burch v. Apfel, 9 F. App'x 255, 259 (4th Cir. 2001) (citation omitted); accord 20 C.F.R. §§ 404.1527(c)(2)(i)-(c)(6). A mechanical recitation of the six factors is not necessary; rather, "[t]he ultimate test is . . . whether it is

clear from the [ALJ's] decision that all of the pertinent factors were considered." Chaney v. Berryhill, No. 2:15-cv-12556, 2017 WL 1197829, at *7 (S.D. W. Va. Mar. 31, 2017) (Copenhaver, Jr., J.) (citing, inter alia, Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007), and Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)).

At any rate, an ALJ must always provide "good reasons" for the weight assigned a treating source. Id. § 404.1527(c)(2). In particular, when an ALJ denies a claimant's application,

> the notice of the determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Fox v. Colvin, 632 F. App'x 750, 756 (4th Cir. 2015) (quoting SSR 96-2p, 61 Fed. Reg. 34490-01, 34492 (July 2, 1996)); accord Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017); Newbold v. Colvin, 718 F.3d 1257, 1265-66 (10th Cir. 2013); see also Russel v. Comm'r of Soc. Sec., 440 F. App'x 163, 164 (4th Cir. 2011).

In response on February 20, 2014, to a request for information "to help address [Claimant's] psychological allegations," Dr. Aziz, one of Claimant's treating physicians,

went beyond the request and stated that "[Claimant] is deaf in left ear from acoustic neuroma this might interfere with teaching (2011 diagnosed)." (Tr. 344.) The ALJ discarded this opinion, stating as follows:

> On February 20, 2014, Fatima Aziz, M.D., reported treating [Claimant] for insomnia, anxiety, and depression. Dr. Aziz reported [Claimant's] anxiety was due to acoustic neuroma and was somewhat situation[al] based on activity. Dr. Aziz opined [Claimant's] mental condition did not pose any functional limitations. Dr. Aziz also opined [Claimant's] deafness in her left ear from acoustic neuroma might interfere with teaching. I give great weight to his opinion regarding [Claimant's] mental condition not posing any functional limitation because it is consistent with the normal mental status findings. However, his opinion that [Claimant's] hearing loss "might" interfere with her teaching is speculative and is not supported by any explanation. Therefore, I have given it little to no weight.

(Id. 26.)

To begin, Dr. Aziz's opinion that Claimant has sustained hearing loss finds support in the clinical evidence inasmuch as Claimant's hearing loss is well-established. But because Dr. Aziz's opinion that it "might interfere with [her] teaching" is "inconsistent with other substantial evidence," Craig, 76 F.3d at 590, it is not entitled to controlling weight. In particular, Drs. Franyutti and Gajendragadkar each concluded that Claimant's hearing loss does not interfere with teaching as it is generally performed in the national economy with limitations, such as avoiding concentrated exposure to noise.

(Tr. 83-86, 96-99.) Moreover, Dr. Aziz's own records fail to assess Claimant's hearing loss other than noting the complaints from Claimant herself. (See id. 318; 334-35.)

The issue then becomes whether it is clear from the ALJ's decision that he considered each of the six relevant factors in affording Dr. Aziz's opinion less than controlling weight. Burch, 9 F. App'x at 259. After consideration of the record and the ALJ's decision, the court finds that the ALJ fulfilled his obligation.

The ALJ noted that Dr. Aziz treated Claimant for "insomnia, anxiety, and depression," and that Dr. Aziz is "a primary care physician." (Tr. 22.) These show that the ALJ considered the nature and extent of Claimant's treatment relationship with Dr. Aziz, along with Dr. Aziz's practice in primary care. Additionally, the ALJ observed that Dr. Aziz's opinion lacked "support[] by any explanation," (id. 26), evincing the ALJ's consideration of the fourth factor, see 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, . . . the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.").

The body of the ALJ's decision indicates that he considered the consistency of Dr. Aziz's opinion as well as that of Dr. Moore with the record as a whole. The ALJ began by summarizing Claimant's testimony at the hearing. (Tr. 25.) However, the ALJ concluded that "[C]laimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible for the reasons explained in this decision." (Id.) The ALJ then recounted Claimant's treatment records from Drs. Wetmore and Moore, Claimant's apparent lack of severe symptoms at the hearing, Claimant's testimony that her symptoms "have very little effect on her activities of daily living other than" climbing stairs, and the opinions of Drs. Franyutti and Gajendragadkar. (See id. 25-26.) It is against this backdrop – the record as a whole - that the ALJ's measurement of Dr. Aziz's opinion is properly read.

It is also clear that the ALJ considered the remaining two factors, length of treatment and frequency of examination, albeit not as plainly as the above four. The ALJ stated that "[r]ecords from Fatima Aziz, M.D., a primary care physician, revealed treatment for insomnia, anxiety, and depression (Exhibit 3F [Dr. Aziz's treatment records])." (Id. 22.) Thus, it is clear that the ALJ reviewed Dr. Aziz's treatment records,

from which the length of treatment and frequency of examination are readily gleaned.

The court notes that Dr. Aziz evidently did not regularly, if ever, treat Claimant for her hearing loss, (see id. 303-35), and the ALJ's discussion of Dr. Aziz's records suggests that he similarly interpreted the treatment records. For that reason, the ALJ justifiably did not detail the length and frequency of Claimant's treatment with Dr. Aziz. The court is satisfied that the ALJ considered each of the six factors listed in Burch in discounting Dr. Aziz's opinion on Claimant's hearing loss.

Moreover, the insufficiency of the speculative opinion of Dr. Aziz, rendered without any explanation, was such that recontacting him for further comment was unwarranted.

Accordingly, the court finds that the decision by the Commissioner is supported by substantial evidence and the court does not adopt the magistrate judge's recommendations.

IV. Conclusion

For the foregoing reasons, the court ORDERS that

1. Claimant's request for judgment on the pleadings be, and hereby is, denied;

2. The Commissioner's request for judgment on the pleadings be, and hereby is, granted;

3. The Commissioner's decision be, and hereby is, affirmed; and

4. Claimant's action be, and hereby is, dismissed, with prejudice and removed from the docket of the court.

The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record, any unrepresented parties, and the United States Magistrate Judge.

ENTER: March 12, 2018

John T. Copenhaver, Jr.
United States District Judge