UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CLAUDIA B.,

      Plaintiff,

v.                                    Civil Action No. 2:17-cv-01282

KILOLO KIJAKAZI, Acting
Commissioner of the Social
Security Administration,[1]

      Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

      Pending is plaintiff Claudia B.'s Federal Rule of

Civil Procedure 59(e) motion to alter or amend judgment entered

on March 12, 2018, filed April 4, 2018.  ECF No. 25.


I.   <u>Procedural Background</u>


      Plaintiff instituted this action on February 16, 2017,

pursuant to 42 U.S.C. § 405(g), seeking judicial review of the

Commissioner's final decision denying her application for

disability insurance benefits.  The action was referred to

United States Magistrate Judge Omar J. Aboulhosn for

---

[1] The caption reflects that Acting Commissioner Kilolo Kijakazi
has been substituted pursuant to Federal Rule of Civil Procedure
25(d).  The plaintiff's name in the case caption has been edited
in accordance with this district's requirements as set out in
Standing Order in re: Privacy in Social Security Opinions,
effective Oct. 31, 2022.

consideration pursuant to 28 U.S.C. § 636(b)(1)(b) and the standing order of this district.  The magistrate judge entered a Proposed Findings and Recommendation ("PF&R") on September 29, 2017, recommending that the court:

> grant Plaintiff's request for judgment on the pleadings to the extent that she asks for remand for further administrative proceedings in order to correct the errors below, deny Defendant's request to affirm the decision of the Commissioner; reverse the final decision of the Commissioner; and remand this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g).

PF&R, ECF No. 19, at 1-2 (emphasis and citations omitted). Thereafter, the Commissioner filed four objections on October 13, 2017, challenging the magistrate judge's findings that: (1) the administrative law judge ("ALJ") failed to provide "good reasons" for discounting certain opinions of Dr. Fatima Aziz, one of the plaintiff's treating physicians, regarding the impact of the plaintiff's hearing loss on her ability to perform her past occupation as a preschool teacher; (2) the ALJ should have recontacted Dr. Aziz before discounting his opinion; (3) "persuasive contrary evidence" must exist in the administrative record for an ALJ to reject a treating physician's opinion; and (4) substantial evidence did not support the ALJ's determination that the plaintiff was not disabled.  ECF No. 20.

After considering these timely objections, the court entered judgment in favor of the Commissioner on March 12, 2018. ECF Nos. 23 and 24.  Specifically, the court noted the four objections to the PF&R and addressed the ALJ's decision to give less weight to Dr. Aziz's opinions against the backdrop of other evidence in the record that supported the ALJ's ultimate conclusion that the plaintiff was not disabled.  ECF No. 23, at 7, 12-15.  In doing so, the court determined that the ALJ's conclusion was supported by substantial evidence, namely, that which contradicted the opinions of Dr. Aziz.  Id. at 12-15.

## II.  Rule 59(e)

Plaintiff's memorandum in support of the pending motion to alter or amend judgment contends that:

> Although the Court properly acknowledged that the Commissioner had "lodge[d] four objections to the magistrate judge's PF&R", unfortunately, only the first two of those objections, which focused on the weight given to Dr. Aziz's opinion, were addressed. As a result, the original question presented by [plaintiff] to the district court – whether the ALJ's RFC was supported by substantial evidence – was missed, and therefore, not resolved when the Court declined to adopt all aspects of the magistrate judge's PF&R based on only one of the two proposed findings that supported the magistrate judge's overall recommendation for remand.

ECF No. 26, at 2.  The court's analysis, in plaintiff's view, amounts to a clear error of law under the Federal Magistrates

Act, 28 U.S.C. § 636, and Mathews v. Weber, 423 U.S. 261 (1976), inasmuch as district judges retain the ultimate "responsibility to make a final determination on the issues presented by [] plaintiff[s]" when Social Security cases are referred to magistrate judges for the preparation of proposed findings and recommendations.  Id.  Plaintiff proceeds to argue that the magistrate judge's substantial evidence analysis was correct and "requests the Court to adopt those portions of the magistrate judge's PF&R not previously reached by the Court, grant Plaintiff's motion for reconsideration, and vacate its prior decision, thereby granting plaintiff's motion for summary judgment and remanding this matter to the Commissioner for a correction of the errors made below."  Id. at 2-5.

The Commissioner filed a response on April 16, 2018, arguing that plaintiff is inappropriately using Rule 59(e) to rehash her prior substantial evidence arguments.  ECF No. 27, at 2.  Further, the Commissioner asserts that the court did, in fact, consider the primary issue raised by the plaintiff and addressed by the PF&R, i.e. whether the ALJ's decision was supported by substantial evidence.  Id. at 2-3.

"Rule 59(e) motions can be successful in only three situations: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available

**4**

at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" <u>Zinkland v. Brown</u>, 478 F.3d 634, 637 (4th Cir. 2007) (quoting <u>Ingle v. Yelton</u>, 439 F.3d 191, 197 (4th Cir.2006)).  "Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" <u>Exxon Shipping Co. v. Baker</u>, 554 U.S. 471, 485 n.5 (2008) (quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2810.1 (2d ed. 1995)).

        Plaintiff contends that the court committed a clear error of law under the Federal Magistrates Act and <u>Mathews</u> inasmuch as it did not address the entirety of the PF&R's substantial evidence analysis, which endorsed her position. However, she points to no authority that supports this proposition.  The only case she cites, <u>Mathews</u>, addressed whether a district court's general order referring a 42 U.S.C. § 405(g) Social Security action to a magistrate judge for the preparation of nonbinding recommendations was authorized under the Federal Magistrates Act.  <u>Mathews</u>, 423 U.S. at 263-65.  The Supreme Court determined that this practice was clearly appropriate, finding that:

> [t]he magistrate may do no more than propose a
> recommendation, and neither § 636(b) nor the General
> Order gives such recommendation presumptive weight.
> The district judge is free to follow it or wholly to
> ignore it, or, if he is not satisfied, he may conduct
> the review in whole or in part anew.  The authority—
> and the responsibility—to make an informed, final
> determination, we emphasize, remains with the judge.

Id. at 270-71.  Mathews' relevance is not entirely clear, but,
if anything, the case accords with the court's decision to
diverge from the conclusions of the PF&R.  It does not, in any
regard, suggest that the court committed a clear error of law
under the Federal Magistrates Act by undertaking a de novo
review of the issues presented in the parties' briefing.

        Nevertheless, while the court finds no error of law
under the Federal Magistrates Act in its decision to depart from
the analysis of the magistrate judge, it considers whether the
plaintiff has raised other meritorious grounds to alter or amend
the judgment.  Because Rule 59(e) allows a court to correct its
own errors, Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co., 148
F.3d 396, 403 (4th Cir. 1998), the court addresses the
substantive contentions in the plaintiff's memorandum in support
of the motion to alter or amend judgment.

### III. Substantial Evidence

In its prior opinion, incorporated here by reference, this court considered whether the ALJ's conclusion as to the limiting effects of plaintiff's impairment were supported by substantial evidence in light of the ALJ's decision to discount certain unsupported pieces of opinion evidence from a treating physician. ECF No. 23. In the motion to alter or amend judgment, the plaintiff makes no argument that the analysis in that order was clearly erroneous to the limited extent it goes, but rather that it is incomplete. See ECF No. 26 at 3-4. The court need not disturb the prior opinion in order to proceed in supplementing the analysis therein. Taken at its highest, the plaintiff's substantive argument on this motion is that, notwithstanding the court's prior opinion, the ALJ's determination of her residual functional capacity ("RFC") was still not supported by substantial evidence because it failed to account for other conflicting record evidence when considering her ability to perform past relevant work.

Here, following the prescribed procedure, the ALJ found that the plaintiff's hearing loss was a medically determinable impairment and that "[r]egarding communication, she would be limited to hearing from only one ear." Tr. 24-27. The ALJ proceeded to consider its effects on her RFC, ultimately

7

determining that she retained the capacity for light work in moderate noise environments.  On that basis, the ALJ found that the plaintiff was capable of performing her past relevant work as a teacher and preschool teacher because they did not require performance of work-related activities precluded by her RFC. Tr. 27.

On this motion, the plaintiff focuses her challenge on the ALJ's finding that she is capable of work in a moderate noise environment.  In particular, the plaintiff contends that in explaining his RFC conclusion the ALJ failed to account for numerous allegedly consistent statements as to her difficulty hearing in the workplace, as well as elements of the Vocational Expert's testimony.  ECF No. 26 at 2-4.  The court will consider both objections in turn.

a. Legal Standard

Reviewing courts must uphold an ALJ's findings where they are supported by substantial evidence and reached by applying the correct legal standard.  Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).  On substantial evidence review, a court may

not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (quoting Craig, 76 F.3d at 589).

At step four of the sequential disability evaluation process under 20 C.F.R. § 404.1520, an ALJ must undertake a "function-by-function analysis" of the claimant's impairments to determine her residual functional capacity ("RFC"). See Dowling v. Comm'r, 986 F.3d 377, 388 (4th Cir. 2021). This involves first determining whether the claimant has a medically determinable impairment and then evaluating its limiting effects on the claimant's functioning. Monroe v. Colvin, 826 F.3d 176, 187 (4th Cir. 2016). "[A] proper RFC analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." Thomas v. Berryhill, 916 F.3d 307, 311 (4th Cir. 2019). The ALJ's explanation must "build an accurate and logical bridge from the evidence to [the] conclusion." Monroe, 826 F.3d at 189. In this explanation, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," Reid v. Comm'r, 769 F.3d 861, 865 (4th Cir. 2014), but he may not omit discussion of substantial portions of the record. See Thomas, 916 F.3d at 312.

b. Plaintiff's subjective statements

By reference to the magistrate judge's discussion in
the PF&R, the plaintiff points to allegedly consistent record
evidence showing the impairments caused by her hearing loss,
both in her employment as a teacher and in the activities of
daily life. Specifically, at her evidentiary hearing, the
plaintiff testified that she "was having trouble hearing [her
students]" and "couldn't always hear what came over the
intercom." Tr. 48. She "often times could not hear during
[faculty meetings]." Id. And she further testified: "My
inability to hear, I didn't feel like I could keep a safe
classroom with my balance issues and with not being able to
hear. I can't hear where an [sic] noise originates." Id.

Outside of the workplace, the plaintiff testified that
she can no longer go to movies, concerts, or small groups at
church, and when she meets with friends, they have to orient
themselves to one side and eliminate music and background noise
in order to chat. Tr. 56. She can only use a telephone on
speakerphone and avers that her "word recognition is horrible."
Id. To illustrate the interference of her hearing loss, the
plaintiff testified that she was once pulled over by a patrol
officer after failing to hear his siren. Tr. 43. On the day of
the hearing, the plaintiff testified that she struggled to

10

understand directions from reception staff outside the hearing
room and had to request that the ALJ speak more slowly during
the proceedings.  Tr. 37, 56.  She later noted that the hearing
setting was very accommodating and did not have multiple people
talking at the same time.  Tr. 53.

In his decision, the ALJ found that "the claimant's
statements concerning the intensity, persistence and limiting
effects of [her] symptoms are not entirely credible for the
reasons explained in this decision" and that "[t]he record does
not support the limitations alleged by the claimant and reveal
that she is not fully credibility [sic] regarding the severity
of her complaints."[2]  Tr. 25.  The ALJ's decision cited the
following evidence in reaching the unfavorable determination

---

[2] While previously focused on the "credibility" of the claimant's
subjective statements, the Commissioner has clarified that the
evaluation of subjective evidence about the intensity and
persistence of symptoms in determining disability instead
requires that the adjudicator assess the consistency of such
statements with other record evidence.  S.S.R. 16-3p
(superseding S.S.R. 96-7).
    The court notes that the Commissioner's revised policy
interpretation on this point was effective from the date of
March 28, 2016, which was subsequent to the entry of the ALJ's
written opinion on October 27, 2015 but prior to the decision
becoming final on December 23, 2016 or the plaintiff filing her
complaint in this action for judicial review on February 16,
2017.  Consistent with the present policy interpretation and the
language of the regulations, the court conducts its review with
reference to the record consistency, rather than the
credibility, of the plaintiff's subjective statements about the
limiting effects of her hearing loss.

regarding plaintiff's subjective statements about her hearing loss:

(1)   MRI tests performed in 2007, 2008, 2010, and 2013 showing an intracanalicular enhancing small mass in the left ear, the most recent of which showed no significant worsening as compared to the prior tests (Tr. 366-91);

(2)   Notes from plaintiff's visits with Dr. Wetmore, including the results of audiogram testing showing "very minimal" worsening of plaintiff's hearing and an unchanged word recognition score of 64 percent between 2010 and 2013, as well as Wetmore's review of the 2013 MRI results in which he noted that the left ear intracanalicular tumor appeared somewhat smaller than in previous tests (Tr. 298-302, 380-84);

(3)   Notes from plaintiff's visits with Dr. Moore in which Moore observed that plaintiff had a history of acoustic neuroma, hearing loss, and vertigo, but that plaintiff's hearing was intact to conversation;[3]

---

[3] The ALJ's decision references plaintiff's visits to Moore on December 1, 2014 and April 7, 2015.  Tr. 25.  However, the ALJ's citations in the decision refer to notes dated January 1, 2014 (hearing was "intact to conversational voice both ears"), December 1, 2014 (hearing was "intact to conversation"), and April 7, 2015 (hearing was "intact to conversation").  Tr. 25 (citing to Tr. 353, 361, 407).  The ALJ's decision did not cite

(4)   Plaintiff's absence of difficulties during the hearing,
      including an ability to clearly hear what was said,
      recognize words, and seek clarification on the meaning of
      unfamiliar terms;

(5)   Plaintiff's activities of daily living, like cooking,
      quilting, driving, and performing household chores being
      largely unaffected by her medical conditions;

(6)   The opinions of two State agency medical consultants who
      completed Physical RFC Assessment forms on January 28,
      2014 and April 11, 2014, finding that the plaintiff was
      not disabled but had RFC limitations including, <u>inter
      alia</u>, only light exertion and no concentrated exposure to
      noise (Tr. 83-87, 96-100); and

(7)   The opinion of Dr. Aziz as to the potential for
      plaintiff's hearing to interfere with teaching (Tr. 344).

   Tr. 25-26.

         The court need not reiterate its prior findings about
the opinion of Dr. Aziz other than to affirm that the ALJ's
attribution of little to no weight to such a speculative opinion

---

to Moore's note from a visit on August 6, 2014, which indicated
that the plaintiff "[h]as problems with hearing" as well as that
the plaintiff's hearing was "intact to conversation."  Tr. 358,
360.

was not erroneous.  Of the remaining six evidentiary supports,
the MRI testing falls squarely within the definition of
objective medical evidence under 20 C.F.R. § 404.1529(c)(2).
Accordingly, if the MRI evidence is not consistent with the
plaintiff's subjective statements about the limiting effects of
her hearing loss, it may be used to discount those subjective
statements, so long as it is not the singular basis for
discounting them.  See Lewis v. Berryhill, 858 F.3d 858, 866
(4th Cir. 2017) (subjective statements may not be discounted
solely on the basis of objective medical evidence).

        The five other supports cited by the ALJ fall within
the category of "other evidence" under §404.1529(c)(4).  This
category is necessarily expansive and includes "any symptom-
related functional limitations and restrictions" reported by the
claimant, a treating or nontreating source, or other person, so
long as it "can reasonably be accepted as consistent with the
objective medical evidence and other evidence."  20 C.F.R. §
404.1529(c)(3).

        Although an ALJ's weighing of the consistency of
subjective statements must be upheld so long as it is supported
by substantial evidence, see Johnson, 434 F.3d at 653, the ALJ
has a general obligation to consider the record as a whole and
not "simply cherrypick facts that support a finding of

nondisability while ignoring evidence that points to a disability finding." Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017). "An ALJ may not consider the type of activities a claimant can perform without also considering the extent to which she can perform them." Arakas v. Comm'r, 983 F.3d 83, 99 (4th Cir. 2020) (quoting Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018)) (emphasis in original).

Here, at least two, and likely three, of the ALJ's stated reasons for discounting the plaintiff's subjective statements were entirely consistent with the limiting effects that plaintiff alleged resulted from her hearing loss. First, the plaintiff's participation in the hearing was consistent with her own statements about the limiting effects of her hearing loss, notwithstanding the ALJ's apparent omission of the plaintiff's request for an accommodation that the ALJ speak slowly to facilitate her understanding. The plaintiff stated repeatedly that she was limited by her hearing in particular situations where there were multiple conversations or lots of background noise. As she noted to the ALJ, she was able to fully participate in the hearing precisely because such conditions were accommodated in the hearing room setting.

Similarly, standing alone, it is difficult to assess whether or not Dr. Moore's notes that the plaintiff's hearing

was "intact to conversation" is consistent with the plaintiff's own subjective statements.  The court notes that the plaintiff testified that she was able to hold conversations with small groups of friends, albeit with some modification, such as placing them on her good hearing side, to accommodate her unilateral hearing loss in the left ear.  See Tr. 56.  Dr. Moore's observations, on the other hand, provide sparse detail about the process used to ascertain that plaintiff's hearing was intact to conversation, or the environmental conditions in which it was assessed.  To the extent it was assessed based on a one-on-one conversation between a patient and her healthcare provider in a quiet exam room, it would appear to have little utility in assessing the consistency of plaintiff's subjective statements about her ability to hear in a classroom environment.

The ALJ's discussion of the plaintiff's activities of daily life also appears to have little relation to the record consistency of her subjective statements about the limiting effects of her hearing loss.  In support of his finding that the plaintiff's conditions have "very little effect on her activities of daily life," the ALJ cited her ability to cook, quilt, drive, perform household chores, socialize with family and friends, and go out to eat.  Tr. 26.  The only impediment acknowledged by the ALJ is the plaintiff's need to be careful

when going up and down stairs.  Id.  While perhaps germane to
the plaintiff's vertigo or balance issues for reasons not
explained by the ALJ, there is little reason to see how the
plaintiff's ability to cook, quilt, go out to eat, or perform
chores at home is inconsistent with her subjective statements
about the limiting effects of her hearing loss.

Furthermore, as concerns the plaintiff's ability to
drive and socialize with family and friends, the ALJ appears to
have impermissibly cherrypicked certain facts about these
activities without considering the extent to which the plaintiff
was limited in doing them.  The plaintiff's testimony hardly
conveys an ability to drive unaffected by her hearing loss where
she has been pulled over by patrol officers for a failure to
hear an emergency siren and expressed consequent hesitation
about driving.  Similarly, the ALJ's discussion about
plaintiff's ability to socialize fails to acknowledge the
significant limits on the extent to which plaintiff alleges she
can do so.  An adequate determination about the consistency of
plaintiff's subjective statements with the record evidence
should have addressed limits raised multiple times in the
record, like her inability to be around small or large groups,
Tr. 53, 56, 245, as well as her statements that "I'm not very
social anymore because I can only hear out of my right ear," Tr.

17

245, and "someone speaking to me will not be heard unless they are facing me and on my right side." Tr. 246; see also Tr. 56.

Notwithstanding the issues with a number of the ALJ's cited reasons for discounting the plaintiff's subjective statements about the limiting effects of her hearing loss, his conclusion is facially supported by substantial evidence in light of the MRI results, notes and audiogram results from Dr. Wetmore as of the time of the ALJ's decision, as well as the prior Physical RFC assessments by two State medical officers. However, the court notes that subsequent to her hearing with the ALJ and receipt of his written opinion, the plaintiff filed a request for review with the Appeals Council, receipt of which was acknowledged by the Office of Disability Adjudication and Review on February 29, 2016.  Tr. 8.  In support of this request, the plaintiff submitted additional evidence in the form of medical records from WVU Medicine covering the dates September 15, 2008 to February 11, 2016.  Tr. 6.

These records were submitted as additional evidence to the Appeals Council and included two important new facts: (1) Dr. Wetmore's visit notes discussing the results from an audiogram test conducted on February 11, 2016 showing "somewhat worse hearing in the left ear with a moderate to profound sensorineural hearing loss with a speech awareness of 45 dB but

only 20% word recognition compared to 64% word recognition in 2013," Tr. 439; and (2) MRI imaging results taken the same day showing a "small region of enhancement within the internal auditory canal on the left" that appeared "slightly more prominent" than in the 2013 study, Tr. 435.  These later results tend to demonstrate that claimant's hearing is effectively limited to one ear.

The Appeals Council received this additional evidence and made it part of the record by Order dated December 23, 2016. Id.  That same date, the Honorable Lisa W. Saunders, Administrative Appeals Judge, issued a Notice denying plaintiff's request for review.  Tr. 2.  This Notice stated that the Appeals Council had considered the ALJ's decision, the additional evidence, and the record as a whole, but concluded that "the additional evidence does not provide a basis for changing the Administrative Law Judge's decision."  Id.

Under the Regulations in effect at the time, plaintiff was permitted to submit additional evidence to the Appeals Council with her request for review that had not been before the ALJ.  See 20 C.F.R. § 404.970(b) (2015).  The Appeals Council is obliged to consider such additional evidence submitted where it is new, material, and relates to the period on or before the ALJ's decision.  Id.; see also Meyer v. Astrue, 662 F.3d 700,

704-05 (4th Cir. 2011).  "Evidence is new . . . if it is not duplicative or cumulative."  <u>Wilkins v. Secretary</u>, 953 F.2d 93, 96 (4th Cir. 1991).  "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome."  <u>Id.</u> (citing <u>Borders v. Heckler</u>, 777 F.2d 954, 956 (4th Cir. 1985)).

Upon this showing, the Appeals Council must consider the additional evidence, along with the record as a whole, and consider whether the ALJ's decision is contrary to the weight of the evidence.  20 C.F.R. § 404.1970(b) (2015).  If the Appeals Council finds that the ALJ's decision is not contrary to the weight of the evidence, it may deny the claimant's request for review, and need not explain its rationale for doing so.  <u>Meyer</u>, 662 F.3d at 705.

While the Appeals Council need not provide a statement of reasons for its denial of a request for review when additional evidence is presented, a district court reviewing a claimant's challenge to the denial of benefits must assure itself that the Commissioner's decision is supported by substantial evidence based on the entire record.  <u>See id.</u> at 707.  "Where an insufficient record precludes a determination that substantial evidence supported the ALJ's denial of benefits, [a federal] court may not affirm [the decision] for

harmless error." Patterson v. Comm'r, 846 F.3d 656, 658 (4th Cir. 2017). A record is insufficient where no fact finder has assessed the probative value of competing evidence on the record, Meyer, 662 F.3d at 707, unless the evidence in the case as a whole is "so one-sided as to require the conclusion" that the Commissioner's denial of benefits was supported by substantial evidence. Wiebusch v. Comm'r, 2022 U.S. App. LEXIS 20732, at *13 (4th Cir. 2022).

The Appeals Council apparently determined that the WVU Medicine records met the requirements that additional evidence be new, material, and related to the relevant period when it made the evidence part of the plaintiff's record by its Order of December 23, 2016. Tr. 6. This determination was sound in that the WVU Medicine records were: new, in that they were neither duplicative nor cumulative; material, in that there was a reasonable possibility that the dramatic decline in audiogram word recognition and slight worsening in MRI results could have changed the outcome; and related to the period prior to the ALJ hearing, in that the February 11, 2016 test results showing only 20 percent word recognition in the left ear concerned an ongoing health issue present at the time of the hearing.

The Appeals Council having made this evidence part of the record while summarily denying the plaintiff's request for

review, however, means that no fact finder has yet attempted to weigh it or reconcile it with other conflicting and supporting evidence in the record.  Taking the heed of the Fourth Circuit in an analogous situation, this court notes that it cannot undertake review of this evidence in the first instance.  _Meyer_, 662 F.3d at 707.  Like _Meyer_, this is not a case where the Commissioner's evidence discounting the plaintiff's subjective statements about the limiting effects of her hearing loss is so one-sided that the Commissioner's lack of fact-finding on the additional evidence nevertheless supports a finding of substantial evidence.  Indeed, the additional evidence weighs directly and materially upon the MRI test results from 2007 to 2013, as well as the audiogram results and treatment notes from Dr. Wetmore in 2010 and 2013 – both of which the ALJ relied upon to discount the plaintiff's subjective statements.

It is decidedly not the province of this court to weigh the plaintiff's statements against the record as a whole and assess their consistency; that task is left to the Commissioner.  However, it is the responsibility of this court to require that the Commissioner's decision be supported by substantial evidence.  This requires a fair statement of the facts considered and a logical explanation of how they build to the Commissioner's conclusion.  In this case, the Commissioner

has not satisfied that requirement.  In determining the plaintiff's RFC, the ALJ found the plaintiff's subjective statements regarding the limiting effects of her hearing loss "not entirely credible," but this finding is not supported with reasoning that shows inconsistency between the plaintiff's subjective statements about the limiting effects of her hearing loss and the record as a whole, particularly in light of the 2016 WVU Medicine records.

### c. Vocational Expert's Testimony

The court next turns to the testimony of the Vocational Expert.  In evaluating the plaintiff's ability to perform her past relevant work as a teacher and preschool teacher, the ALJ found that plaintiff's RFC would not preclude her performance of work-related activities.  Tr. 27.  In reaching this conclusion, the ALJ relied on the Vocational Expert's testimony in response to an initial hypothetical posed by the ALJ that an individual with the plaintiff's age, education, and specific capacity and limitation to hearing in only one ear, with noise at a moderate level, could perform as a teacher or preschool teacher as generally performed in the national economy.  Tr. 27, 64.

The plaintiff contends that the ALJ's decision on the performance of past relevant work provided inadequate exposition because it failed to account for purportedly contradictory testimony from the Vocational Expert given in response to two additional hypothetical questions from the ALJ and on examination by plaintiff's attorney. For clarity, the court reproduces each of these exchanges verbatim below.

> Hypothetical #1
> ALJ: Assume a hypothetical individual the claimant's age and education with the past jobs that you described. Assume further that this individual is limited to, and we're going to say, we'll start with light work with the additional limitations: Climbing ramps and stairs occasionally. Climb ladders, ropes, and scaffolds, never. Balance occasionally. Stoop, kneel, crouch, and crawl occasional. As far as communications it's limited to hearing only from one ear. Unprotected heights, never. Moving mechanical parts, never. Operating a motor vehicle, whether [sic], humidity, and wetness, dust, odors, fumes, extreme cold, extreme heat, vibration, occasionally. Noise at a moderate level. Okay. Could the hypothetical individual perform any of the past jobs that you described as actually performed or generally performed in the national economy?
> . . .
> VE: Yes, your honor.
>
> ALJ: Okay, and which job?
>
> VE: Both jobs, the preschool director teacher and also the teacher.

Tr. 63-64 (emphasis supplied).[4]

--------

[4] Following this exchange, the Vocational Expert clarified that her response was with respect to how the jobs were generally performed in the national economy (at a level of light

<u>Hypothetical #2</u>

ALJ: [O]ne more hypothetical.  Well, maybe another
one.  But this is starting with the light with the
same limitations I had before, but <u>in addition it's
limited to hearing simple basic communications</u>.  So
it's basically hypo-one in addition to hearing from
just one ear also limited in the ability to hear – all
you can hear are simple basic communications.
. . .
ALJ: -- I guess what I'm getting at is that it sounds
to me like <u>as a teacher you got to be able to hear
more than just regular communication</u>.
. . .
ALJ: You got to be able to concentrate and listen to
what a child or somebody is saying.  You got to listen
to their questions –

VE: -- well, when you say basic communication, simple
basic communication are you talking about the
communication in terms of what's required just to
complete routine activities of daily living like
managing to go to the grocery store and, you know, ask
for something they need and get a response and being
able to understand that response?  Or being able to
ask very simple directions and being able to
understand those directions, say where is this place
located?  You know, just how far from here is it, but
not getting into a long discussion where there's just
a few words that they have to focus on and hear?

ALJ: I think it's more than that.
. . .
ALJ: [They can] communicate more than that, but also
recognizing that there's that limited ability more than the
average person can hear with both ears.  So I don't
know if I can, how I – <u>what I'm saying is that there's
definitely a hearing, a loss of hearing and an ability
to hear what a normal person would hear</u>.  Is that –

VE: Well, I think, I think I understand what you're
saying, and <u>I think based on that</u> because <u>you're going
to be limiting her to a quieter environment</u>, because
there's going to be interference from just regular

---

exertion), as opposed to how the plaintiff had actually
performed her work as a preschool teacher (at a level of medium
exertion).  Tr. 64-65.

routine noise that's in like an office setting or
classroom setting.  It's going to have to be quieter
than that.  Is that --

ALJ: Yes.

VE: -- what you're trying to say?  In terms of her
being able to understand responses --

ALJ: Yes.

VE: -- okay.  <u>In that event I would not be able to
identify any jobs that she could perform</u>.

ALJ: And the past jobs I think would also be out.
Correct?

VE: Yes, they would because they were all moderate
noise level, and you have a combination of
conversations as well as background noise.  Even
furnaces kicking on and off or your air conditioning
kicking on and off.  Those kinds of noises plus
children chattering, possibly --

ALJ: Okay.

VE: -- traffic in the hallway.

Tr. 70-72 (emphasis supplied).


    <u>Hypothetical #3</u>
ALJ: <u>So the third hypothetical</u> instead of moderate I
guess I would be — I had limited it to be moderate.
<u>It's going to be less than moderate</u>.
VE: Yes.

ALJ: And that would kick out, would then — <u>she
couldn't perform the past jobs and there would be no
other jobs</u>.

VE: Correct [. . .]

Tr. 72-73 (emphasis supplied).

<u>Examination by counsel</u>[5]
ATTY: Okay.  So in terms of your definition of
moderate exposure if I were to day [sic, say] <u>the only</u>
<u>exposure she could tolerate are settings where there's</u>
<u>not multiple conversations occurring at once and only</u>
<u>quiet settings?</u>  Would that qualify as moderate or is
that less than moderate?

VE: <u>That's less than moderate.</u>

ATTY: Okay, and so of course that would rule out then
the past work.

VE: Yes.

ATTY: Okay.  That is the only question I had.

ALJ: Okay.  Actually --

ATTY: Thank you for bearing with me.

ALJ: -- <u>that's how they describe it here in my</u>
<u>program.</u>  So if I limited her to quiet work that would
<u>take her out of the past work as a teacher.</u>

VE: Yes.

Tr. 73-74 (emphasis supplied).


      Taken together with the Vocational Expert's testimony

that a classroom is a moderate noise environment,[6] Tr. 63, these

---

[5] Due to an apparent stenographic error, the Vocational Expert's
responses in this exchange are incorrectly attributed to the
claimant and marked as CLMT.  For the sake of clarity, the court
has corrected this to read VE in the quoted passage.

[6] This is consistent with the Dictionary of Occupational Titles
entry for Teacher, Elementary School.  <u>See</u> Dictionary of
Occupational Titles § 092.227-010 (4th ed., 1991) (listing
classroom as a moderate noise environment); <u>see also</u> Special
Characteristics of Occupations Defined in the Revised Dictionary
of Occupational Titles, Appendix D (1993) (defining "noise
intensity level" and providing illustrative examples of a

exchanges with respect to the hypotheticals establish the following: (1) an individual limited to hearing in one ear in a moderate noise environment is not precluded from working as a teacher or preschool teacher; (2) an individual with hearing in only one ear whose ability to hear is limited to simple basic communications, whereas a teacher must be able to hear more than just regular communication, would be unable to work in a moderate noise environment and would require a quieter environment, thus precluding the past relevant work as a teacher or preschool teacher or any other job; (3) similar to the second hypothetical, such an individual whose ability to hear requires a less than moderate noise level would be precluded from any job; and (4) such an individual whose ability to hear is contingent on a quiet setting or the absence of multiple conversations would be unable to work in a moderate noise environment, thus precluding the past relevant work.

While the ALJ applied the first scenario in his analysis, Tr. 64, what is clear enough about the latter scenarios is that they concern a hypothetical individual who is unable to perform work in moderate noise environments. Thus, they would hold relevance for the ALJ's consideration of the

---

moderate noise environment as "business office where type-writers are used; department store; grocery store; light traffic; fast food restaurant at off-hours").

plaintiff's ability to perform her past relevant work if the ALJ
found, based on the evidence before him, that the plaintiff
could not tolerate a moderate noise environment.

In this case, the ALJ's determination of the
plaintiff's ability to tolerate a moderate noise environment
cannot be said to be supported by substantial evidence.  Here,
the determination that the plaintiff could tolerate a moderate
noise environment was based on a discounting of plaintiff's
subjective statements about the limiting effects of her hearing
loss that was legally insufficient for the reasons set out in
the preceding subsection of this opinion.  Specifically, the
ALJ's determination did not account for the effect of multiple
conversations and background noise.  As the vocational expert
noted in connection with the second hypothetical, "there's going
to be interference from just regular routine noise that's in
like an office setting or classroom setting. It's going to have
to be quieter than that."  Tr. 71-72.  Upon remand, the
Commissioner must revisit the analysis of the plaintiff's
subjective statements about the limiting effects of her hearing
loss, taking into account the 2016 WVU Medicine records, as well
as the responses of the vocational expert, and determine the
effect on the plaintiff's ability to tolerate a moderate noise
environment.

IV.   <u>Conclusion</u>

For the foregoing reasons, and having reviewed the record <u>de</u> <u>novo</u>, the court ORDERS as follows:

1. The motion to alter or amend the judgment (ECF No. 25) be, and hereby is, granted;

2. The prior judgment of the court (ECF No. 24) be, and hereby is, vacated and set aside;

3. The final decision of the Commissioner be, and hereby is, reversed;

4. Plaintiff's request for remand be, and hereby is, granted, and this action is remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g), fourth sentence; and

5. This case be dismissed from the court's docket.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: December 28, 2022

John T. Copenhaver, Jr.
Senior United States District Judge

30